Good morning. Good morning. May it please the Court, my name is Peter Tamayo. I represent Mr. Thomas, who is the appellant, cross-appellee in this case. Your Honor, this is a case in which Mr. Thomas brought a spent shell to the New York City Police Department, which was investigating a shooting, and ended up being arrested, and after two trials, sentenced to 51 months as a felon in possession of ammunition. And now in the cross-appeal, the government asked to add 10 years to that, I'm sorry, 15 years to that sentence in terms of the ACCA. The Court should keep in mind that this is a case in which the government argued that Mr. Thomas was in fact a shooter, that he had shot an individual several days earlier, but that was never charged. In fact, New York City Police Department never charged him with that shooting, although they initially arrested him. They turned him over to the Federal Government to be prosecuted. And the judge, the district court judge, found they had not even shown that by preponderance of evidence, and rejected their attempt to use the cross-reference to increase the sentence. And that's for good reason. There was no, he never, when he was interviewed by the police, admitted being the shooter. The police officers knew him for years before this event, did not identify him as a shooter. And the victim and the victim's girlfriend did not identify him as a shooter. But the government now seeks to apply the ACCA to this case. And while that's a very important issue and obviously very topical right now, there are some other issues that we raised in our direct appeal that I'd like to spend some time addressing. First, Your Honor, is the argument that the government failed to prove that Mr. Thomas even violated the felon in possession of ammunition. The only evidence was a spent shell, which we argue as a matter of law is not ammunition. Well, there was a time when it wasn't spent. Before it was spent, it was a shell. But there was no evidence that he possessed it at that time. He possessed it as a spent shell. Well, when you say there was no evidence, the jury was, the government argued to the jury, at least in the principle summation, essentially that he possessed the shells in the gun when he shot the victim. And that was the theory that was presented to the jury. Now, you say there was no evidence, there were no identifications, no eyewitness identifications. But there was certainly significant circumstantial evidence. He's dressed that day the way the shooter is dressed. He's seen on a video at what the jury could have concluded, holding the gun. He acknowledges that he had the gun and has a somewhat strange story about how he got it. Why isn't that all evidence that supports the theory that he was the shooter and that he possessed the shells in the gun at the time of the shooting? That's what the jury was asked to conclude by the government. Well, that's what they asked him to conclude. But the government also objected to the jury instructions requested by the defense, and they allowed the judge to charge them. Let's get back to those instructions. What the government submitted as an instruction and what the judge originally drafted simply defined ammunition as defined in the statute. It was the defense that inserted the spent shell into the charge. The government objected to that, and the government objected to the language, and the language was taken out, ammunition as we generally understand the term, which seems to me to be very bad language because Congress has defined what ammunition means. It's not just what some juror might think is the standard meaning of ammunition, right? But Congress never defined ammunition to include a spent shell. It didn't, but the spent shell is not in the judge's draft. It's not in the government's draft. It's what the defense wanted in was a sentence that referred to the spent shell, and they got it. In terms of the, as I recall, Your Honor, in terms of the apparent authority to hold that and to turn that over, that in terms of proving that it was the evidence of the instruction. The language is part of the definition of ammunition, and then there's a question of knowledge, and the defense wants to say he has to know that a spent shell is ammunition. In the ordinary sense of the word, and the only thing that came out of what the defense wanted was in the ordinary sense of the word. That's all part of that. But then it just follows, Your Honor, that the spent shell is ammunition, but it's not ammunition. It can't be ammunition. Agreed, but you're the one, you, your predecessor, of course. The defense was the ones that got that language in there. But they didn't get all the language they wanted. Excuse me. And once the government successfully objected to, as the term is commonly understood, the defense didn't say, well, then we don't want any of this. They didn't say take it out. It came in. Haven't you weighed this whole argument anyways? This Spruill, I think, is the decision of this Court in 15. Well, Spruill has never You asked for the charge. You argued this. How do you get to complain about it? Well, I don't think Spruill — I'm sorry. I don't think the case bars us from raising the issue on appeal if, as a matter of law, the evidence did not support the conviction, Your Honor. Well, it does talk about a critical determination that the defendant, through counsel, acted, quote, intentionally in pursuing a particular course of action. In terms of — It's just like counsel below pursued this spent shell. In terms of — In large an argument. In terms of waiving the — You're complaining that the judge made an error by not granting an acquittal because of this spent shell isn't ammunition argument. That's correct, Your Honor. But the waiver in Spruill dealt with waiving an objection to a dismissal of a juror, not making an argument in a summation based upon the instructions the judge was giving over their objection. Your Honor, I just would like to spend also a couple minutes on an issue that's important and could also get lost in your determination, and that is the special conditions to supervise release. We appealed the judge's inclusion of three conditions. The government was wrong when they said we objected to all of them. There were three of them that we appealed. One more — and they dealt with issues of sexual offenses. And there's no record in this case of anything current that had anything to do with those sexual offenses. How old was the — was the — how old was the sexual — It was a 1983 conviction, Your Honor, 1983. It was 35 years ago. Sometimes my generation is a little hard to remember that. Eighty-three is so long ago. It seems like yesterday. It does. It does. But it's an awfully long time. He served that sentence. He was on probation for five years — I'm sorry, parole in the State system for five years afterwards. He completed that successfully. There's no post-history of any sexual crimes at all in his record. And they reach back and they add this condition. And then they add some kind of crazy — the second condition about registration when SOAR wasn't even in effect for — in 1983 and wouldn't apply. And those conditions, Your Honor, are totally superfluous. The government concedes that, that these are conditions that the probation department can impose, you know, in the present time under their existing — under the standard conditions. And it would be if they found a basis. So if in their supervision of Mr. — of Mr. Thomas and in the psychological evaluations that they're going to be doing, mental health evaluations they're going to be doing on Mr. Thomas, they find a need for additional conditions, they can go back to the judge and at that point ask for the judge. And they can have — he can have a common — a current record and get due process. But to reach back 35 years ago and take a conviction and use that to put these kind of very significant conditions as special conditions we think is inappropriate and that that should not stand. Your Honor, we also raised — I just touched briefly on a dismissal of the foreman during deliberations, which was also, we believe, a violation of Mr. Thomas' right to have his case heard by the jury he chose. Apparently there was an — Sotomayor, that's the view that a witness was a liar. He expressed it to himself. He didn't reach a final conclusion on that. There was no testimony anybody heard that. So to say that a witness cannot — There was testimony that the government witness heard it, and the government witness is sitting further from the juror than his fellow jurors are. No, there's no testimony of it, Your Honor. There was a statement of the prosecutor or the attorney. The judge didn't even question the person who supposedly heard it. And when it was said there was no indication anybody else heard it or that it would affect it. I mean, how could somebody sit through a lengthy trial and not form preliminary determinations as to who's telling the truth and who's not telling the truth? I mean, that's against human nature. We sit there and have to evaluate them. But if it's said to — in the hearing of fellow jurors, that changes the situation, does it not? But if there was a record that showed that, in fact, was overheard by somebody else. This is a very strange thing how this came up. This was some — Are you going to — you think that the judge should have called in the jurors sitting immediately around and asked them and sort of emphasized this — you know, did you hear anybody say anything about a witness being a liar? That — I think some — It might lead to everybody getting disqualified at that point. And maybe that should have happened. But if that was so important to the government, to the trial judge. But don't forget, the juror, when they questioned the juror, did not say — recall saying that. He said he recalled thinking it of a different — of a different officer, but not saying it out loud. So we have the very strange thing where one police — where one witness tells another witness, oh, I think I — this juror said something. The prosecutor makes a statement. The judge immediately pulls the juror out of deliberations to question him. And then the juror gives ambiguous answers. And the judge makes a ruling that he's disqualified not because other people may have heard him, because the remedy of removing him doesn't solve that problem, because those people still heard him. But he's removed because he formed a preliminary decision as to the credibility as a witness. I think that's incredible. I mean, I've sat through long trials. We've all sat through long trials. You have to make those — those decisions about who's telling the truth, at least preliminarily, in real time. And then when you go to deliberations, the jury can talk about, oh, I thought this person was lying. And another juror might say, no, no, that person was corroborated by all this other evidence. I think that's — you know, that's an awfully tough standard. And remember, the remedy was to remove the juror, not to instruct the other jurors that they should not consider that. So the remedy didn't solve the issue that Your Honor is raising, respectfully. Roberts. Five minutes of rebuttal. Yes. Thank you, Your Honor, to address the other issue. Good morning. Good morning. Good afternoon. Good morning, still. May it please the Court. Kevin Trowell for the United States. Obviously, we have a cross appeal that I'd like to spend some time on, but if it's okay with the Court, I'd like to begin with the issues that Mr. Tomeo raised in his argument. Whatever order you like. Great. Thank you. To begin with, the challenge he raises in terms of sufficiency is not a factual challenge. So I think, Your Honor, Judge Lynch, you were asking about the video recordings and so on. Maybe that was Judge Jacobs. I'm sorry. That's not the basis of his sufficiency challenge. It's purely legal, and it's based on an argument — based on a jury instruction that he himself invited. I think Your Honor's questions are right on point when you note that the government wanted none of this sentence. It was not part of the government's theory. The government didn't believe it was appropriate and specifically requested. It's not just the jury instruction, right? The jury instruction is that he has to know that what he had, whatever it is that the jury finds he had, including possibly a spent shell, is ammunition, right? It's really about the knowledge element. I thought the government's position here was that there is no sufficiency of the evidence problem or legal problem with a conviction based on a spent shell because the government did not present that argument to the jury, that the government argued only about live ammunition and guns. Correct. Okay. And I'm just emphasizing there that the — that exact point. He styles it as a sufficiency challenge.  It's not a typical sufficiency challenge because it's not a challenge to the evidence that the government adduced at trial. I think that's right. Right. It's a challenge to the jury instructions, which he believes because the defendant characterized — Well, it's not only the jury instructions, right? Because the jury instruction does not actually say a spent shell is ammunition. It has this sort of funny feedback loop because the defense version got truncated that says he has to know that the spent shell — that a spent shell was ammunition. That, I suppose, implicitly takes the position that a spent shell could be ammunition. Right. So I'm just trying to figure out is the issue of whether — if he could have been convicted because the jury believed that a spent shell was ammunition, is that an issue that is properly before us, first of all? In other words, can Mr. Tomeo — is there some reason why Mr. Tomeo can't argue that the jury was in fact presented with a theory that a spent shell could be ammunition and that's just legally wrong? If the jury based their determination on that, that should be thrown out. I think there is, Your Honor. So to follow up on a point that Judge Hall asked about, Spiro certainly discusses waiver, true waiver. And that's obviously — I think that's the government's main point here. There are a slew of cases in the circuit that are more specific that apply that principle to the invited error of a jury instruction. And, you know, one, for example, would be Giovinelli, 464 F. 3rd, 346 at 351, where a defendant is seeking a jury instruction because I think it's fair to say the defense viewed this as beneficial to them. After all, there was a hung jury in the first trial in some — where the government in fact pursued this theory. It was probably a bad theory and it didn't work out. That seemed beneficial, I think it's fair to say, from the record to the defendant. Well, it's not beneficial to the defendant to tell the jury you can convict on the basis of a spent shell because that is ammunition. Well, here's the reason. It's to the benefit of the defense to argue this is what the government's really saying and it's wrong. But the point is it's wrong. That's what the defense wants to argue. True enough. Both parties — and there's a footnote in our factual recitation — at the first trial, both parties agreed that a spent shell was ammunition. I don't think that's a preposterous conclusion. After all, it says — doesn't use the word shell casing, but it uses another term that means the empty shell, cartridge casing. Thank you. I don't think on this record there's anything to decide the issue of whether those two are the same, presumably the government could put on. I understand that spent shells can often be reloaded. Perhaps the government could call an expert that would suggest in a particular case a spent shell would be ammunition because it was going to be used in ammunition. I don't know, but that's not here. Well, I was thinking was if I were in a foxhole and I asked for a resupply of ammunition and they sent me a box of spent shells, I wouldn't think I'd been — my request had been granted. That's fair, but the statute also talks about primer. It does talk about primer. And that is also not going to be very helpful to you in a foxhole. So I think that the statute certainly sweeps broader than a complete bullet. But that issue just wasn't here. It wasn't the government's theory. The government didn't want it. Except that in almost the very last thing that the government said to the jury in the rebuttal summation is, ladies and gentlemen, even if you buy any portion of the defendant's story, he is still guilty of the crime charged because he tells you he got this thing from Holloway. And so after he had already taken possession of the gun and ammunition, at no point did he ever get permission to hold the gun and so on. So I'm not so sure that the government totally abandons the theory. The main summation doesn't refer to it. But it gets a little funky in the rebuttal. There are a few funky things about the trial. There's no question about that. I think both with respect to the jury instructions and the jury summations, this Court reviews both of those things in their totality. And so even when you're looking at the jury instruction and the sufficiency challenge that arises from it, the Court isn't looking at the sentence, both clauses, one clause. It's reading the instructions as a whole. And the jury, I think it's fair to say from the entirety of the instructions, was given the proper definition. The theory of the government was 99.9 percent. I take your point about the sentence, the stray sentence in the rebuttal. But it was he was the shooter. That was the thrust of the government's case. And to the extent the defendant is now unhappy with that, it was invited error. I'm not sure I know the answer to this question from what you said earlier, so I'm just going to ask it. Is it the government's view in this case that this spent shell is ammunition under this statute? That was, I mean, I think it's fair to say, and there's no reason to hide from the fact that in the first trial, that was the government's theory. I'm talking this trial. Yeah, this, I mean, in some sense the government can't escape that because we offered it in the first trial before Judge Corman. So I'm not going to say no, but I think the answer is irrelevant insofar as it wasn't proffered as a theory. Let me be clear. The question is the government's legal position, if pressed to it, would be that the spent shell could be ammunition. But you're saying we don't need to reach that in this case because it wasn't the jury was told about? I think it's difficult to address the question of spent shell because we don't have a record to discuss that on. In the Judge Corman trial, both parties agreed, so it was never disputed. In the second trial, it wasn't the government's theory, so it wasn't sort of hashed out. I mean, if we're talking hypotheticals, I could imagine a situation where you had someone who was collecting spent shells from a range and refilling them. That's someone who, where the spent shell might well constitute ammunition. Well, that's the hypotheticals. But in terms of this trial, is the government's position that we do not need to decide that issue? Yes. Yes. That's because of the defense request for the jury instruction and because your position is the government essentially did not raise that theory to the jury. Yes. Those are the two reasons. Yes, Your Honor. Could you talk about the special conditions? Yes. They do seem to be, I'm not sure what this has, this case has to do with the special conditions that were imposed from events decades earlier. Sure. So I think here I'm channeling the district judge, obviously, who. The district judge did not explain why he imposed these. True. And the case is. That's why you have to channel. Yes. Yes. But he should have. Perhaps. But this Court's cases suggest that where it's evident from the record, that's going to be sufficient. And I would submit to Your Honor. It's evident from the record. Yes. But here what we have is a sex offense. It was from a long time ago. There's no question about that. The government doesn't dispute that. The question is, if the district judge is assessing with respect to a defendant, presumably he's weighing in the balance imprisonment and supervised release. We have a defendant here who is, by all accounts, extraordinarily dangerous. He's committing crimes well into his 50s, sort of defying all the literature on recidivism and so on. He's got a lengthy history. And the Court is assessing, how will I supervise this individual? He imposes two conditions that relate to the 1983 conviction. The first one is simply a restatement of the law. If he has to register, he must register. Now, Mr. Tomeo suggests he has no obligation to register. I don't believe that's true. It's certainly not in the record. The condition also requires registration under State registries. So if, for example, Mr. Thomas were to move to another State that required him to register, this condition would apply. I don't think SONRA applies, and I don't think that New York law would require him to register. However, States, including California, Alabama, and others, have registries that date back to the 40s, 50s, and 60s and require lifetime registration under certain conditions. So all this condition is saying is, if you live in a jurisdiction that requires you to register, register. And I think that's fair for the district judge to put this defendant on notice of that requirement. The second one, and that one to me doesn't appear to be particularly onerous because it just mirrors existing law. The second one is somewhat more onerous but seems to me perfectly related to the district court's need to understand both what supervision would entail and what Mr. Thomas' needs are under supervision. He didn't impose, unlike the State system, I think PSR paragraph 73 notes that in connection with a State conviction, he had sex offense treatment. This is a sex offense evaluation. And I may have misheard Mr. Tomeo, but I thought I heard him concede that if probation and the — if an evaluation determined that he needed treatment, the court could simply bring him back and impose that. There was nothing in front of the judge when he didn't talk about why he was imposing this condition that would suggest there had been any recent assessment or any concerns that might raise a need for an examination. Well, I agree with the first part, but not with the second. I agree with you that there had not been an evaluation, and that, to my mind, would be a reason to have one. The district court is — the district court is faced with supervising this man in 51 months, which actually is about 10 months away. The reason for ordering this special condition, if we read into the record, is that he had a conviction at age 17 in 1983. It's a sexual abuse conviction, a rape, and nothing else since would call for a condition of a psychosexual disease. Yes. I mean, that plus the fact that the State system at a more recent point in time had also seen fit to impose sex offender treatment. So I think those facts together, all the district court is interested in knowing here is, what does this individual need on supervision to protect the community? Can I ask a different question here? Sure. If you prevail on your cross-appeal, do we need to reach this issue? Because if you prevail on your cross-appeal, there would be a need for resentencing, and all of these issues could be more thoroughly threshed out in the district court than they actually were. Whether or not there would be a waiver on the part of the defense in some way in this case, a forfeiture of the issue, surely now defense counsel will be properly aware from this appeal that this is a very live issue, and it'll be dealt with, and maybe we'll have to deal with it if the judge imposes it again at some future point. But am I right that if you prevail, all the defense's issues on sentencing will be folded into a resentencing? I agree, Your Honor. Yes. Could I turn to the jury issue? Yes. Were you at the trial? I was not, Your Honor. You weren't. I didn't think so. So maybe you don't know. Why did they wait two days after the testimony while they're in deliberations to say, oh, Judge, we have a problem? If I could separate first what's in the record from my understanding. That's extra record. I'll start with the first part, and then you can tell me if you want to go to the second part. The first part is it's clear from the record that the government came in that morning, said to defense counsel, here's what we've become aware of from an agent. This happened during his testimony. And so the government is acknowledging to defense counsel that this had happened, I think it was two days prior. They give him an explanation, and had defense counsel thought that that was an issue to raise, they could have done it. Here, federal defenders were representing. These are repeat players. Everyone's known to each other, and the government made whatever representations it made, and defense counsel decided not. Defense counsel pursued other arguments with respect to this juror, for sure, but not that one. So. That was the next day? No, that was. The government comes in that morning and says, here's what the agent has told us. I think this was two days after his testimony. Yeah. Yeah. So that's, what's in the record is the government told the defense that it had happened two days prior. The defense didn't inquire about that issue, didn't ask the judge to inquire about it. So what we don't know is whether the government only, the prosecutors only found out from the agent that morning that was only mentioned to them then, or whether it was mentioned to them two days before, and they then spent time thinking about what to do, or just were neglectful, and then realized they should raise it. We don't, the record doesn't disclose what happened in those two days. I believe, Your Honor, that the record reflects the government saying to the court that they had learned of it that morning. And that's my understanding as well. So that's the record portion of it. I'm happy to discuss sort of my understanding beyond that if it's helpful, but that's what I understand from, that's actually in the transcript. Just to respond to a point that he makes briefly, I see that I'm running out of time. I can turn. Let me ask you this. Sure. You argued that the first degree sexual abuse is a violent felony. But it looks as though it's a statutory rape. And I think the prosecution established from the Queens DA that it was statutory rape. Is that, have we ever said that that is a violent felony? So I think there are two issues here. I think what Your Honor is referring to is the government's change in position. Yes. So at a certain point in time, the government had a phone conversation with the Queens DA. The Queens DA, based on I'm not sure what, made a representation about what the conviction was for. Well, also you ascertain that under the primitive computer situation at the time, it would be recorded as violent. Even if it was not. Well, it would have been recorded as subsection 1, correct? Yes. Which is forcible compulsion. Which is unquestionably violent, in my view anyway. But that means you can't rely on that to establish whether it was violent or whether it was statutory rape, which may not be. There are two issues. I agree with Your Honor as to the second question. I don't think the government has argued on appeal that if it were subsection 2, if that were in fact the crime of conviction, that that's a violent felony. The government has not taken that position. I think here, because the certificate of disposition says subsection 1, there's at least reason to question where the Queens Assistant District Attorney got that information from about it being statutory rape. My assumption is that it was sort of, oh, you know, this crime of first-degree sexual abuse, that's typically statutory rape. You're not the ones who asked. Yes. And again, that was not the best procedure on the part of the government. The government should have had the certificate of disposition in its hand at that moment. They made a representation to the Court about what the Queens ADA said. That turned out to be untrue. The certificate says subsection 1. That's presumptively valid. It's not always valid, and Green makes that clear. The issue here is that the district court assumed it was valid without addressing the question of its validity. So is the government's position, I think the government's position, at least the decretal language that you request, changes between the main brief and the reply brief. In fact, the reply brief says everything should be affirmed as its conclusion, but I take it that's typographical. I think what the government's ultimate evolved position in the reply brief is, is that this needs to be remanded, because what the district court said, the way the ACCA did not apply, is by saying, I assume the sexual abuse counts. So nothing further is said about that. But the robberies don't count. And we now know that that is incorrect as a matter of law, or at least that's the current state of Second Circuit law pending a rehearing and bank petition that's out there. Assuming, not based on any inside information about what's happening, because I'm the senior judge, I don't have information about what's happening on the rehearing petition, but if it turns out that that fails, that the circuit law remains, that the robberies are violent crimes, don't we need to return it to the court and permit an inquiry with respect to what the sexual abuse crime really is? Because as you point out, the circuit case law on that is that the certificate of disposition is presumptive evidence. Now, it may well be that the ADA told the government at some point it was not that. That's something that perhaps the defense could rely on itself, and maybe they could go back and get that ADA, and we could have him in the court, and Judge Kuntz will figure out whether this was a violent crime or was not. Correct. Although, presumably, we'd all have to be relying on Shepard-approved sources to make that determination. Well, I'm not sure about that, right? Because what could it possibly mean to say that the Shepard-approved source is a certificate of disposition, and that's presumptive evidence? There would stop being presumptive evidence, it seems to me, if the defense was required to rely only on Shepard-approved documents, of which there wouldn't be any, to undermine the issue of what it really was and whether this Shepard-approved document is, as a matter of fact, inaccurate. I read Green to suggest that for certificates prior to a certain point in time, the presumption sort of fades or is certainly lessened, and that the government needs to support it. And I think Green talks about a plea transcript or other similar document to support that. So I think the government's position on remand would be we understand that the system at the time may have defaulted here. Is there a Shepard-approved document that supports, that in fact shows he was convicted of subsection 1? But, yes, I think in answer to your question, that would be the answer. But then I think I have to ask you, is there one? Because if there is not, and you're saying that it would behoove the government to have one, then I don't see what's the point of a remand. If you're saying you think you have one and, therefore, there is a point to a remand, well, by all means, bring it out. And that doesn't commit us to a view that you're right about what you represent at all. It just means that will be tried out in the district court. Yes. In full disclosure, I personally have made efforts to locate a document. My understanding is that the Queens District Attorney's Office no longer has them. That, I don't think, ends the inquiry because I think there may be a court file. There may be other, we may be able to reach out to the court reporter. In some circumstances, we've done that. Well, but that's all speculative, isn't it? I mean, I was operating on the assumption that the presumption gets you to a factfinder and then the defense would have its shot at whether that's really evidence that can be relied on. So if you're telling me that the government's position, in fact, is that the government has to have something more than the certificate of disposition, that as of now there isn't anything and that nobody did this at the, nobody raised this issue at the, before the sentencing judge and, in fact, the government sort of represented that it probably wasn't a violent crime, then it seems to me we'd be remanding on pure speculation that maybe the government can come up with what you're now telling me with present state of the record is inadequate to support that finding. Well, I think it's inadequate because the district court didn't address the issue. I mean... Well, I hear that, but he didn't address the issue because of the robbery stuff. But as far as what was known at the time, you're telling me that all the government had then, all the government has now is a certificate of disposition that you are candidly saying is not sufficient in itself to carry the day. But we should remand anyway against the speculative possibility that you'll come up with something. Well, let me say this, Your Honor, and I am trying to be candid about this because it certainly would have been the better practice to have resolved this issue internally before, in spite of the fact that it wasn't raised before the district court. So I certainly recognize that. Green hasn't been sort of argued about in our briefing here. So, you know, Green talks about a witness who testified in that case about the system at the time. I've reread Green in an attempt to discern what the government's, what possibilities the government has on remand. We have not fought about that, so I wouldn't say that we haven't disputed that here. So I wouldn't say that that's teed up exactly. But I'm not sure that I read Green to say that in the absence of, I mean, Green itself concludes that this system existed. So I don't think that the burden shifts to the defendant to disprove this thing. I mean, I do think that the government needs to support it in some way. I just thought that's what presumptive means. But I think Green goes through an analysis of what was happening at the time and concludes, you know, so Green sort of puts this presumption in place. Now, I think maybe there are, I'm not think, I'm certain that there are many avenues the government still can pursue here. But I take Your Honor's point that those haven't been pursued. And, you know, what we have, though, is a decision on the legal question that is plainly wrong in the government's view, and that's what brings us before the circuit. Can I ask, do you have anything more on that conversation with the Queen's DA and the assistant? Because I'm confused. I think it's that the Queen's DA said it was statutory rape. But at the time, the statute, I think, defined statutory rape as the victim being under 11. Am I misreading the statute? The statute at the time, yeah, you're right. So how does that make sense when the PSR tells me the victim was a 15-year-old mentally challenged female? And I think what that ultimately goes to is the likely unreliability of the ADA's comment and that it was sort of an informal call that probably was best not relied upon in the course of a filing, to be honest. You know, it's not inconceivable that subsection 2 was the subsection of conviction because the woman was the girl was apparently mentally disabled. So it's not inconceivable. Those two things are not. But it could be forcible compulsion because at least from the PSR summary, it describes forcible. Absolutely. But that's not a Shepard basis. Correct. So I think you have the evidence that exists suggests subsection 1, and the district court erred in assuming that was correct. We should have had an inquiry about that then. But then the district court, assuming it was correct. No. The district court erred with the benefit of hindsight in saying I don't need to do this because of the robberies, and the robberies don't count. So I don't think you can tax the district court with not going, with making any error in not going down a road that under the state of the law as the judge assumed it was. And maybe erroneously, maybe you shouldn't have assumed that even then. But the error, if any, is in saying this can't be an ACCA case because of the robberies. So I'll just put the sexual abuse thing to one side and assume for the sake of the argument that the government is right that it's a violent crime and I don't need to deal with it. I think that was perfectly reasonable. It just turned out to be, if they did need to decide this because of the robberies, that probably wouldn't have gone away. Yes. If there are no further questions, we'll rely on a brief. Thank you. Thank you, Your Honors. Let me just go back to the robberies, Your Honor, because I think the court is pursuing kind of the argument the government's been making that the Thrower case and these other cases have kind of made it any robbery a violent crime for the ACCA. And you have to take in mind here that the count we're talking about for Mr. Thomas is not a robbery. He was convicted of attempted robbery in the third degree. Yes, we've also said attempted robbery. No, because a robbery under the New York State statute can be obtained by a threat. So an attempted threat would not be violent because it didn't convey any sort of put the victim, the purported victim, in any risk of harm. The victim doesn't know about it. The situation which we had, there was a case that was brought up in the court below where individuals were stopped on the way into a robbery and they had with them weapons. And if they had gone in and shown the weapons, they would have been threatening, but they didn't enter them. I hear the argument, but if we have held that attempted robbery is a crime of violence, that argument would be foreclosed, would it not? Except the case was in the second degree, not in the third degree. The robbery that in which the attempted robbery was, it was in the second degree where there's a weapon and I believe the definition is there's a weapon involved. This is the lowest degree of robbery. We don't have an attempted robbery third case yet. I don't. I think this is all. And this is exactly the issue in which the Thoreau appellees are seeking review. They've asked the circuit to look at that. Wait, wait, wait. They're seeking review of what exactly? If they are making this argument and that argument fails, then I'm not sure. They're making this argument because that applies to robbery second as well as to robbery third. It wouldn't be categorical because maybe there was a gun in the particular case, but that's not something we can consider anyway. Right. But if I can just try to answer the question, I may not be following the exact question, but my understanding is in Thoreau the appellees are seeking review on Bonk on the issue of attempted robbery in the third degree. It's one of the issues they're raising. Because robbery in the third degree can be proven by threatening language, but the ACCA does not cover attempts to threaten. I hear what you're saying, but then it sounds like what you're saying is this case is controlled by Thoreau. It's just that maybe there's a good argument that Thoreau is wrong in this respect, which will be decided by the court and bank. Right? In other words, I think, you know, the Thoreau case. This argument would be irrelevant in Thoreau if Thoreau is disposed of anyway because second degree doesn't include the threat language. But if the threat language is there and if the people in the defense in Thoreau is making the argument that, no, it's not categorical, you missed this point of an attempted threat, that argument either wins or loses, but it still doesn't distinguish this case from Thoreau because it doesn't distinguish third degree from second degree. It's just an argument that Thoreau is wrong. The argument is Thoreau is wrong, but I don't think that Thoreau got to the attempted threat, which is an issue that they're raising in the request for the rehearing on bank because they're saying Thoreau missed this point. Right. So if Thoreau is, if the petition is denied as 99.9 in Amar, Thoreau would not be controlling here because it never got to that issue of attempt. In other words, it didn't find an attempt to threaten was a crime of violence. Well, but it does find that all degrees of robbery in New York are, so you'd have to be saying that it was wrongly decided. Well, I'm saying that there's a all degrees of robbery are, but not attempted robbery because attempt and the New York courts, you know, it's a little different situation. I hear your point. Also, Your Honor, there was something counsel said, and I hope, I didn't want to let it stand, which was that this issue of the, on the sexual abuse was not raised in the court below. It was, in fact, raised in the court below in the Federal Defender's objections to the, to the court on the, to the findings in the PSR. And in that, they specifically raised the issue about the, about the certificate of disposition and what, how it's being handled. And as you said, the judge never got to that. So I think at a minimum, you know, I'd like to see you affirm the judge on the, on the ACC issues. But if you don't, then I think we have to go back and have all these issues handled. I would ask that. The government concedes that effectively in the reply brief that we could not determine for ourselves on this record that the sexual abuse is a crime of violence, that the most they're actually asking for is that kind of remand. Yes, Your Honor. Thank you. Thank you.